**Nos. 24-13581, -13583**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

UNITED STATES OF AMERICA,
ex rel. CLARISSA ZAFIROV,

Plaintiff-Appellant, and

UNITED STATES OF AMERICA,

Intervenor-Appellant,

v.

FLORIDA MEDICAL ASSOCIATES, LLC, et al.,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Middle District of Florida

---

**BRIEF OF *AMICUS CURIAE* FORMER PROSECUTORS IN
SUPPORT OF PLAINTIFF-APPELLANT AND INTERVENOR-
APPELLANT, AND IN SUPPORT OF REVERSAL**

Debra Loevy
Loevy & Loevy
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
*Counsel for Amicus Curiae*

Dated: January 15, 2025

## Certificate of Interested Persons and
## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule s 26.1, 26.1-1, 26.1-2, and 26.1-3, *amici curiae* incorporate the certificates of interested persons in the principal briefs filed by Plaintiff-Appellant and Intervenor-Appellant, and those filed in subsequent amicus briefs by nonparties. Counsel for *amici curiae* certify the addition of the following interested persons and entities.

1. Tristram J. Coffin;

2. Jerry E. Martin;

3. William Nettles;

4. Joyce White Vance;

5. Loevy + Loevy (incorporated as Elgron, Inc.);

6. Debra Loevy;

7. Daniel Twetten; and

8. Dominique Gilbert.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement . 2

Table of Contents ....................................................................... i

Table of Citations ....................................................................... ii

STATEMENT OF AMICI CURIAE ......................................... vii

SUMMARY OF ARGUMENT ................................................. 1

STATEMENT OF THE ISSUE ................................................. 2

ARGUMENT ............................................................................. 3

   I.  The Purposes and History of the False Claims Act Are Served by Relators. ............................................................................ 3

   II. The Government Exercises Significant Control Over Relators. ...... 6

CONCLUSION ...................................................................... 13

Certificate Of Compliance ........................................................ 1

Certificate Of Service ............................................................... 1

Table of Citations

CASES

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 272 (2019) .................................................................................. 11

*The Confiscation Cases*, 74 U.S. (7 Wall.) 454, 457, 19 L. Ed. 196 (1868) .................................................................................................... 13

*Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) (per curiam) .... 7

*United States ex rel. Marcus v. Hess,* 317 U.S. 537, 547 (1943) ........... 3, 4

*United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) ...................................................................................... 7

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 339 (4th Cir. 2017) ......................................................................... 9

*United States ex rel. Newsham v. Lockheed Missiles and Space Co.*, 722 F. Supp. 607, 609 (N.D. Cal. 1989) ......................................... 3

*United States v. Bornstein,* 423 U.S. 303, 309 (1976) .............................. 3

*United States v. Everglades College, Inc.*, 855 F.3d 1279, 1289 (11th Cir. 2017) ............................................................................................ 10

*United States v. Griswold*, 24 F. 361, 366 (C.C.D. Or. 1885) .................. 4

*United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 340 (6th Cir. 2000) .................................................................... 7

*United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 428 (2023) ................................................. 8, 9, 10, 11, 12

*Vermont Agency of Natural Resources v. United States ex rel. Stevens* 529 U.S. 765 (2000) ......................................................... 3, 11

STATUTES
31 U.S.C. § 3730(b)-(d) ............................................................ 11

31 U.S.C. § 3730(b)(1) ............................................................... 9

31 U.S.C. § 3730(b)(2) ............................................................ 7, 8

31 U.S.C. § 3730(b)-(c) .............................................................. 8

31 U.S.C. § 3730(c)(3). ............................................................... 9

31 U.S.C. § 3730(c)(3)-(4) .......................................................... 9

31 U.S.C. § 3730(c)(5) ............................................................... 8

31 U.S.C. § 3731(b)(2) ............................................................. 11

RULES
Federal Rule of Appellate Procedure 29(a)(4)(D) .................................... vii

Federal Rule of Appellate Procedure 29(a)(4)(E) .................................... vii

REGULATIONS

Fed. R. Civ. P. 41 (a) ................................................................. 12

Fed. R. Crim. P. 48 (a) ............................................................... 12

OTHER AUTHORITIES

David Freeman Engstrom, *Harnessing the Private Attorney General:*
*Evidence from Qui Tam Litigation*, 112 Colum. L. Rev. 1244, 1292
n.165 (2012) ............................................................................ 5

Department of Justice Press Release, "False Claims Act Settlements
and Judgments Exceed $2 Billion in Fiscal Year 2022" (Feb. 7, 2023),
*available at* https://www.justice.gov/opa/pr/false-claims-act-
settlements-and-judgments-exceed-2-billion-fiscal-year-2022 ............. 5

Nicolas Mendoza, "Protect Declined Qui Tams; Protect Taxpayers," TAF
Coalition, https://www.taf.org/fbtn2023-sept15/#_ftn1
(Sept. 15, 2023) ...................................................................... 5

Robin Page West, Advising the Qui Tam Whistleblower 51 (2009) ......... 5

U.S. Dep't of Justice, Fraud Statistics: October 1, 1986–September 30,

2023 (available at

https://www.justice.gov/opa/media/1339306/dl?inline.26).....................5

## STATEMENT OF AMICI CURIAE

*Amici curiae* provide the following information pursuant to Federal Rule of Appellate Procedure 29(a)(4)(D) and (E):

*Amici curiae* filing this brief are Tristram J. Coffin, Jerry E. Martin, William Nettles, and Joyce White Vance (collectively, "*Amici*"). *Amici* are former United States Attorneys. Mr. Coffin served as the United States Attorney for the District of Vermont. Mr. Martin served as the United States Attorney for the Middle District of Tennessee. Mr. Nettles served as the United States Attorney for the District of South Carolina. Ms. White Vance served as the United States Attorney for the Northern District of Alabama.

*Amici*'s interest in the case is to provide the Court with the experience and perspective of former federal prosecutors regarding the role that relators play in pursuing False Claims Act matters.

No counsel for any party authored any portion of this brief. No party and no counsel for any party contributed money that was intended to fund preparing or submitting this brief. No person—other than *Amici* or undersigned counsel—contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

The False Claims Act is the United States' primary tool for fighting fraud against the government. Since 1986, the United States has recovered more than $75 billion through the Act.[1]

The whistleblowers who bring these cases to the government—known as "relators"—are essential to the success of the Act. When relators file these cases, the U.S. government has three options: intervene in the matter and take it over; dismiss the matter; or elect to not intervene and allow the relator to pursue the matter while the United States retains ultimate control over it.

In this third situation, the United States receives the benefit of relators and their counsel applying their time and resources to pursue fraudulent actors and ensure recoveries of their misuse of public funds. Such matters serve the purpose and history of the False Claims Act, as they allow the government to recover more of what it has lost and hold more fraudulent actors accountable.

But the government does not blindly hand these matters over to relators. Instead, it maintains exclusive and ultimate control over these

---

[1] *See* U.S. Dep't of Justice, Fraud Statistics: October 1, 1986–September 30, 2023 (available at https://www.justice.gov/opa/media/1339306/dl?inline.26).

matters through the mechanisms discussed below. Of those, the most significant are: (1) in the first place, the government decides whether to intervene in the matter, dismiss it, or allow the relator to pursue it with oversight; (2) even if the government declines to intervene, at all times the government holds the right to dismiss any such matter for any reason the government finds appropriate; and (3) even if the government declines to intervene, the government has a veto power over any settlement proposed by a relator, and the government may choose to settle the matter on its own terms even though it had not previously intervened. In other words, the government, not the relator, determines how a False Claims Act case should resolve.

## STATEMENT OF THE ISSUE

Whether the district court erred by holding that the qui tam provisions of the False Claims Act which were enacted in 1863, have been invoked in over 15,000 cases, and have been universally upheld by other federal courts violate the Appointments Clause of Article II of the Constitution.

**ARGUMENT**

## I. The Purposes and History of the False Claims Act Are Served by Relators.

As the Supreme Court explained in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, the history of *qui tam* suits in the United States of America stretches back to the Founding and before. 529 U.S. 765, 774-78 (2000). The First Congress passed *qui tam* statutes, and the False Claims Act itself dates back to the Civil War.

The purpose of the False Claims Act has been clear since it was signed by President Lincoln in 1863: to root out fraud against the United States. *See United States v. Bornstein,* 423 U.S. 303, 309 (1976) (stating that the principal goal of the 1863 Act was to stop "the massive frauds perpetrated by large contractors during the Civil War")*; see also United States ex rel. Marcus v. Hess,* 317 U.S. 537, 547 (1943) (discussing the history and purpose of the 1863 Act); *United States ex rel. Newsham v. Lockheed Missiles and Space Co.,* 722 F. Supp. 607, 609 (N.D. Cal. 1989) (citing Tomes, Fortunes of War, 29 HARPER'S MONTHLY 228 (1864)).

From its inception, the False Claims Act included a *qui tam* provision, which allowed private citizens to file lawsuits in the name of

the government. "The FCA's *qui tam* provision is passed upon the theory, based on experience as old as modern civilization, that one of the least expensive and most effective means of preventing frauds on the Treasury is to make the perpetrators of them liable to actions by private persons acting, if you please, under the strong stimulus of personal ill will or the hope of gain." *Marcus*, 317 U.S. at 541, n. 5 (quoting *United States v. Griswold*, 24 F. 361, 366 (Or. 1885)).[2]

Consistent with the purpose of the False Claims Act, the United States is able to recover more money and hold accountable more fraudulent actors because of actions where the United States has elected to not intervene directly but has allowed relators to continue the matter. In such cases, relators regularly recover significant amounts for the United States. In 2022 alone, relators recovered more than $1.1 billion for the United States in declined cases. *See* Department of

_____

[2] It is worth noting that the District Court in *Griswold* held that the government had no ability to dismiss a case brought by a relator, which did not cause the court to question the constitutionality of the False Claims Act in any way. *Griswold*, 24 F. 361 at 362-63. Of course, in *Polansky*, the Supreme Court concluded that the government can dismiss a relator's claim for virtually any reason at all, even further bolstering the constitutionality of the Act compared to how the *Griswold* court and other courts understood it.

Justice press release, "False Claims Act Settlements and Judgments Exceed $2 Billion in Fiscal Year 2022" (Feb. 7, 2023), *available at* https://www.justice.gov/opa/pr/false-claims-act-settlements-and-judgments-exceed-2-billion-fiscal-year-2022; *see also* Nicolas Mendoza, "Protect Declined Qui Tams; Protect Taxpayers," TAF Coalition, https://www.taf.org/fbtn2023-sept15/#_ftn1 (Sept. 15, 2023). As of September 2023, relators have recovered $5.1 billion for the United States in actions relators pursued after the government declined to intervene. *See* U.S. Dep't of Justice, Fraud Statistics: October 1, 1986–September 30, 2023 (available at https://www.justice.gov/opa/media/1339306/dl?inline.26).

Where relators and their counsel have the ability and resources to pursue litigation, it frees up additional government resources to pursue other frauds. *See* Robin Page West, Advising the Qui Tam Whistleblower 51 (2009) (noting DOJ is less likely to intervene where "the relator's counsel has the perceived ability to litigate the case satisfactorily on its own"); *see also* David Freeman Engstrom, *Harnessing the Private Attorney General: Evidence from Qui Tam Litigation*, 112 Colum. L. Rev. 1244, 1292, n. 165 (2012) ("[I]f the relator

and his or her attorney appear to have the resources and capability to prosecute the suit effectively, DOJ will be less likely to intervene.") (internal quotation omitted).

The evidence is clear that the United States recovers more under the False Claims Act because of relators pursuing matters in which the government has chosen to not intervene and allowed the relator to pursue the case.

## II.    The Government Exercises Significant Control Over Relators.

At all times, the government retains significant and ultimate control over all False Claims Act litigation.[3] This control does not conflict with the above-discussed benefits to the United States of having relators pursue non-intervened matters. In fact, the power the United States has to control the tool of relator litigation is an essential part of the tool itself: "Congress' manifest desire to ensure that the government

_____

[3] Such control is not a necessary condition to establish that the False Claims Act is constitutional, given the deep and long history of qui tam actions in the United States, and other federal statutes that have no such mechanisms for government control. *See* Brief of United States at § I(A); *id.* § II(B)(2). Nonetheless, the control exercised by the United States over False Claims Act matters confirms that relators are not "officers" of the United States to whom the Appointments Clause applies.

retains significant authority to influence the outcome of *qui tam* actions—even when it decides not to intervene—is entirely consistent with the nature of *qui tam* litigation." *See United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 340 (6th Cir. 2000).

The False Claims Act imposes significant requirements and limitations on relators. A brief passage through the life of a False Claims Act matter demonstrates as much.

At the start, a relator files suit under seal and submits the complaint and supporting material to the government for review.[4] 31 U.S.C. § 3730(b)(2). The government has exclusive control of the matter during this seal period. *Id.* The government investigates and then chooses one of three options: it can intervene and take over the litigation; decline to intervene and allow the relator to proceed, albeit with substantial governmental oversight; or move to dismiss the action,

_____

[4] Note also that a relator cannot proceed *pro se* and must represented by counsel, a requirement that is nowhere found in the offices that courts have concluded are subject to the Appointments Clause. *See Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) (per curiam) (holding a plaintiff may not bring a qui tam FCA action as a pro se relator); *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) ("Because relators lack a personal interest in False Claims Act qui tam actions, we conclude that they are not entitled to proceed pro se.")

including for policy reasons unrelated to the merits. *Id.* 31 U.S.C. §

3730(b)-(c); *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599

U.S. 419, 428 (2023). The government is also permitted to seek an

"alternate remedy," meaning it can bring an action under another law

and eliminate the False Claims Act action. 31 U.S.C. § 3730(c)(5). In

other words, the government decides entirely on its own the fate of the

case at this point: intervene; decline to intervene but allow the relator

to proceed; or dismiss the case.

     If the government intervenes, the relator remains a plaintiff and

is entitled to a share of the recovery, but the relator no longer directs

the litigation. In other words, "[i]f the Government . . . elects to

intervene, the relator loses control." *Polansky*, 599 U.S. at 425. And the

government can move to curtail the participation entirely of a relator

who misbehaves. 31 U.S.C. § 3730(b)(2).

     When the government instead declines to intervene, it may either

dismiss the case or allow the relator to proceed.  If the case proceeds, it

is only at the discretion of the United States. *See Yates v. Pinellas

Hematology & Oncology, P.A.*, 21 F.4th 1288, 1310 (11th Cir. 2021)

("[I]n non-intervened qui tam actions, the relator has primary

responsibility to assert the rights of the United States only because the latter allows it to do so by declining to intervene."). And in such cases, the government nevertheless retains substantial authority throughout the life of a case and at its resolution. The government is entitled to a copy of all filings and can obtain a stay to prevent interference with other litigation. 31 U.S.C. § 3730(c)(3)-(4). It is also permitted to file statements of interest. Additionally—leaving no question about the government's primacy in False Claims Act cases—the government can intervene in a declined case at any point for "good cause." *Id.* 31 U.S.C. § 3730(c)(3). This late intervention power of "good cause" is a power the Supreme Court has interpreted broadly, blessing late intervention when the government "decided that the varied burdens of the suit outweighed its potential value." *Polansky*, 599 U.S. at 428.

Even in declined cases, a relator can only dismiss a False Claims Act with the agreement of the government. 31 U.S.C. § 3730(b)(1). This means that the government retains ultimate and unfettered authority to allow (or reject) any settlement of any case pursued by a relator. *Id.; see also United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 339 (4th Cir. 2017) ("the Attorney General possesses an

absolute veto power over voluntary settlements in FCA qui tam actions"). Furthermore, the government can also decide to settle a non-intervened action, even if the relator wishes to continue pursuing the matter. *See Yates*, 21 F.4th at 1311–12 ("even in a non-intervened action [the government] 'may settle the action with the defendant notwithstanding the objections of the person initiating the action'") (citing *United States v. Everglades College, Inc.*, 855 F.3d 1279, 1289 (11th Cir. 2017)).

Finally, the government can dismiss a False Claims Act case at any time for any reason at all, even long after it had initially declined to intervene. *See Polansky*, 599 U.S. at 428.

To be sure, certain relators challenged the ability of the United States to control non-intervened matters in these ways. However, those challenges have now been conclusively rejected. This Court has held that the government has final and exclusive authority to settle any False Claims Act matter (intervened or not) or to reject the settlement of any False Claims Act matter (intervened or not). *See Everglades College, Inc.*, 855 F.3d at 1289. And the Supreme Court recently held that the government may dismiss any False Claims Act matter

(intervened or not) at any time for any reason. *See Polansky*, 599 U.S. at 428. Clearly, in rejecting these challenges, the courts (including this one) have consistently recognized that even in declined cases the government retains authority over the case.

Relators do not occupy a position in government and do not exercise significant authority. *See Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 272, (2019) (citations omitted) (relators are not Article II Officers, government employees or "the official of the United States charged with responsibility to act" under 31 U.S.C. § 3731(b)(2)). Relators can do nothing more than pursue, with strict limitations, damages claims for financial fraud committed against the government, and they can pursue only those claims about which the relator personally possesses material, non-public information. *Id.* 31 U.S.C § 3730(b)-(d). These fraud claims are essentially tort claims that happen to belong to the government. Relators bring these claims pursuant to what amounts to a partial assignment from the government. *Stevens*, 529 U.S. at 773. Relators do not enforce criminal laws. They do not issue regulations. They do not adjudicate. They are not entitled to declaratory or injunctive relief. And the Justice

Department—even when it has decided in its discretion not to intervene at the outset of a case—can take control of the case, essentially at its sole discretion. *See* 31 U.S.C. § 3730(c)(3); *Polansky*, 599 U.S. at 428.

The government enjoys sole discretion not only to lead a case, but also to terminate it. The government's ability to dismiss a False Claims Act is limited only by Federal Rule of Civil Procedure 41, which applies to all civil actions. *See* Fed. R. Civ. P. 41 (a) (delineating procedure for voluntary dismissal of actions). The application of Rule 41 is "contextual," and in the *qui tam* context, requires some consideration for the interests of the relator. *Polansky*, 599 U.S. at 437. However, only in rare circumstances is a motion to dismiss from the government denied. *Id.* at 438 ("If the Government offers a reasonable argument for why the burdens of continued litigation outweigh its benefits, the court should grant the motion. And that is so even if the relator presents a credible assessment to the contrary."). Such limits on the government's ability to dismiss cases is not unique to the False Claims Act context. It exists even in the criminal context where the government may not dismiss an indictment absent "leave of court" to do so. Fed. R. Crim. P. 48 (a). As the Fifth Circuit reasoned in its *en banc* decision in *Riley*,

compared to Rule 48's restrictions, "[a]ny intrusion by the *qui tam* relator in the Executive's Article II power is comparatively modest, especially given the control mechanisms inherent in the FCA to mitigate such an intrusion and the civil context in which *qui tam* suits are pursued." 252 F.3d at 757; *see also The Confiscation Cases*, 74 U.S. 454, 457 (1868) (explaining that a federal prosecutor "may enter a *nolle prosequi* at any time before the jury is empanelled for the trial of the case, except in cases where it is otherwise provided in some act of Congress").

## CONCLUSION

For more than 150 years, the False Claims Act allowed the United States to be made whole when it was the victim of fraud. The efforts of relators in pursuing non-intervened matters prove important to, and consistent with, achieving the purposes of the False Claims Act. But relators are not out there on their own. Instead, the United States at all times has ultimate authority over such cases. At the start, the government can choose to intervene, to dismiss the case, or to decline to intervene and allow the relator to litigate the case. In the end, the government has unfettered authority to agree to or refuse any

settlement of even those cases where it does not intervene. In short, the qui tam feature of the False Claims Act is not an afront to the government's authority to recover for frauds against the United States, but it instead is a method of pursuing such claims over which the government maintains control, modeling the stewardship of public resources it endeavors to secure.

Respectfully Submitted,

/s/

Debra Loevy
Loevy & Loevy
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
*Counsel for Amici Curiae*

Dated: January 15, 2025

## Certificate Of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the Federal Rules of Appellate Procedure and the Circuit Rules applicable to the form of briefs. In particular, this brief is set in a 14-point, proportionally spaced font (Century Schoolbook) and is no more than 15 pages in length.

/s/ _____

## Certificate Of Service

I hereby certify that on January 15, 2025, I caused the foregoing document, **Brief of Amicus Curiae Former Prosecutors in Support of Plaintiff-Appellant and Intervenor-Appellant, and in Support of Reversal**, to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system.

I further certify that all counsel of record in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 15, 2025    Respectfully submitted,

/s/ Debra Loevy

Debra Loevy
Loevy & Loevy
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
*Counsel for Amicus Curiae*